IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK MERZ and<br>CATHY MERZ,<br><br>        Plaintiffs,<br><br>v.<br><br>BAUSCH & LOMB, INC.,<br><br>Serve: The Corporation Trust Company<br>       Corporation Trust Center<br>       1209 Orange Street<br>       Wilmington, DE 19801<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <u>JURY TRIAL DEMANDED</u><br><br>No. 3:10-cv-00367-GPM-CJP |

## COMPLAINT

COME NOW, Plaintiffs Dr. Mark Merz and Cathy Merz, by and through their undersigned attorneys, and for their Complaint against Defendant Bausch & Lomb, Inc., state as follows:

## PARTIES

1.    Plaintiff Dr. Mark Merz (hereinafter "Plaintiff") is an adult citizen and resident of the State of Illinois.

2.    Plaintiff Cathy Merz is an adult citizen and resident of the State of Illinois.

3.    Defendant Bausch & Lomb, Inc. (hereinafter "Defendant") is a Delaware corporation with its headquarters and principal place of business in Rochester, New York.

4.    At all relevant times, Defendant marketed and sold its product ReNu with MoistureLoc (hereinafter "subject product) throughout the United States and in Illinois, where Plaintiff purchased and used it.

5.    At all relevant times, Defendant and/or its predecessors were engaged in, and made all decisions regarding, the business of researching, designing, testing, manufacturing, inspecting, packaging, marketing, distributing, promoting, advertising and selling the subject product from their headquarters in Rochester, New York.

6.    During all relevant times, Defendant sold the subject product throughout the United States and worldwide.

## JURISDICTION AND VENUE

7.    This is an action for damages that exceeds Seventy Five Thousand Dollars ($75,000.00).

8.    There is complete diversity of citizenship between Plaintiffs and Defendant.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 (diversity jurisdiction) because the amount of controversy exceeds $75,000.00 and because there is complete diversity of citizenship between the parties.

9.    Venue is proper in this District because the cause of action accrued in this District and Defendant did business regularly in this District, sold its products in this District and made a considerable profit from the sale of those products in this District as well as throughout the United States.

## FACTUAL BACKGROUND

10.    The subject product is an ophthalmic product used for the cleaning and storage of soft contact lenses.  It was marketed as a "sterile" product and Defendant claimed that the product "provides sustained comfort, removes protein daily, cleans, rinses, disinfects and stores."

11.    At all times relevant herein, Defendant manufactured the subject product at its manufacturing facility in Greenville, South Carolina.

12.    The subject product was defective and unreasonably dangerous because its use can, and did, cause Plaintiff Mark Merz to develop a fungal infection of the eye known as fusarium keratitis.  Fusarium is a species of fungus and is not a proper or intended ingredient of the product.

13.    Fusarium keratitis infections of the eye often cause severe and permanent vision loss and may, in certain patients including Plaintiff, require corneal transplants and/or removal of the infected eye.

14.    Clusters of fusarium keratitis eye infection cases associated with the use of the subject product were reported in November, 2005, if not earlier, in several parts of Asia, including Singapore and Hong Kong.  The subject product, manufactured at the Greenville, South Carolina facility, was sold by Defendant in those regions of Asia.

15.    According to the Singapore Ministry of Health, a comprehensive case-control study was undertaken in February and March, 2006, to investigate risk factors for the dramatic spike in fungal corneal infections there.  The study found a strong association between the reported corneal infections and the use of the subject product.

16.    This association remained strong even after taking into account socio-demographic, lens hygiene and environmental factors.  The findings are also consistent with observations in the United States and Hong Kong.

17.    As of April 9, 2006, the Centers for Disease Control ("CDC") was investigating 109 cases of fusarium keratitis in multiple states in the United States.  Of the thirty patients for whom complete data were available, twenty-eight reported wearing

3

soft contact lens.  Of these, 26 reported using Defendant's contact lens solution or a generic brand solution manufactured by Defendant.  These patients reported using Defendant's products from multiple product lots.

18.    As of April 9, 2006, eight of these patients had already required corneal transplantation surgery.

19.    Despite the fact that Defendant knew, and had reason to know, of these medical problems associated with and related to the use of its product as early as, at least, November, 2005, Defendant did nothing to warn the public in the United States or worldwide, or withdraw the product from shelves in the United States until mid-April, 2006.

20.    Despite the fact that Defendant knew and had reason to know of the problems associated with its products, and knew this prior to November, 2005, it did not do a full scale withdrawal of the products from the United States market until mid-May 2006.

21.    Plaintiff used Defendant's product as part of his contact lens care.

22.    Plaintiff only required use of a contact lens in his right eye.

23.    On or about January 30, 2009, Plaintiff went to the Wal-Mart Vision Center in Glen Carbon, Illinois complaining of pain in his right eye.

24.    Plaintiff returned to the Wal-Mart Vision Center on January 31, 2009 complaining of increased pain and no improvement.  After another visit later that day, Plaintiff was referred to Illinois Eye Surgeons, where he saw Dr. Michael Jones, an ophthalmologist on February 1, 2009.

25.    On that date, Dr. Jones observed a large, central ulcer in Plaintiff's right eye and he was placed on antibiotics.

26.    On or about February 4, 2009, Dr. Jones noted a perforated, central ulcer and Plaintiff underwent a procedure to correct the perforation.

27.    On or about February 18, 2009, Plaintiff's condition worsened, his right eye showed a dense, purulent ulcer centrally and he was referred to Dr. Hugo Hsu, a cornea and external diseases specialist at Saint Louis University.  A corneal culture was taken of his right eye and fungus of the fusarium species was identified.

28.    On or about February 21, 2009, Plaintiff was diagnosed with fungal keratitis in his right eye.

29.    On or about February 24, 2009, Plaintiff underwent a corneal transplant of his right eye.

30.    On or about March 9, 2009, Plaintiff underwent a vitrectomy of his right eye.

31.    On or about April 22, 2009, Plaintiff underwent a repeat corneal transplant, vitrectomy and repair of a retinal detachment of the right eye.

32.    On or about May 12, 2009, Plaintiff underwent surgery to remove his right eye.

33.    On or about June 26, 2009, Plaintiff was fitted for a custom fit right eye prosthetic.

## COUNT I
### Negligence

34.    Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set fort herein.

35.    At all times herein, Defendant had a duty to exercise reasonable care in all aspects of the design, manufacture, testing, inspecting, packaging, marketing, advertising, distributing and selling the subject product.  This duty included the duty not to introduce a product into the stream of commerce that caused users to suffer from unreasonably dangerous adverse side effects.

36.    At all relevant times to this action, Defendant owed a duty to adequately warn Plaintiff of the risks, dangers and adverse side effects of the subject product.

37.    Defendant failed to exercise proper care in the performance of its duties, and Defendant breached its duties by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, packaging, labeling, marketing, promotion, advertising, distributing and selling of the subject product, including:

    a.    Manufacturing and distributing the subject product with fusarium keratitis;

    b.    Failing to use due care in the design, preparation, development, manufacture, inspection, and packing of the subject product to prevent risk of injuries to individuals who used the product;

    c.    Failing to conduct adequate pre-marketing testing and research to determine the safety of the subject product;

    d.    Failing to use adequate safety, good hygiene and adequate inspections in connection with the manufacturing of the subject product;

    e.    Failing to use good manufacturing practices in connection with the manufacture of the subject product;

f.  Failing to conduct adequate post-marketing surveillance to determine the safety of the subject product;

g.  Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiff, consumers, the medical community and the FDA;

h.  Failing to completely, accurately and in a timely fashion, disclose the fact of the outbreak of fusarium keratitis associated with the use of the subject product;

i.  Failing to accompany the subject product with proper warnings regarding all possible adverse side effects, including, but not limited to, any potential for contracting fungal infections from use of the product, associated with the use of the subject product;

j.  Failing to timely withdraw the product from the market as soon as Defendant knew, or had reason to know, of the outbreak of the increased incidence of patients suffering from fungal keratitis associated with the product's use;

k.  Failing to properly determine and cure the cause of the fungal transmission in its product; and

l.  Such further negligence as the evidence and discovery reveals.

38.  Despite the fact that Defendant knew and had reason to know that the subject product caused unreasonable and dangerous side effects, Defendant continued to promote and market the subject product to consumers, including Plaintiff.

39.     Defendant was, or should have been, in possession of evidence demonstrating that the subject product could cause serious injuries. Nevertheless, Defendant continued to market the product by providing incomplete information with regard to the safety of the subject product.

40.     Defendant knew or should have known that consumers such as Plaintiff would suffer injuries and losses as a result of Defendant's failure to exercise ordinary care as described above, and such injuries were foreseeable.

41.     As a direct and proximate result of Defendant's acts, omissions and breaches of duties as described herein, Plaintiff sustained serious and grievous personal injuries, which have been painful and debilitating and caused him to suffer related losses.

42.     As a direct result of the acts and omissions of Defendant, Plaintiff has sustained permanent injuries. These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

43.     Defendant owed a duty of reasonable care to Plaintiff to design, manufacture, test and perform quality assurance evaluations, sell and/or distribute the subject product in a safe condition.

44.     Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of

consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

45.     Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

46.     By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

47.     As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT II
### Strict Products Liability-Design and Manufacturing Defects

48.     Plaintiff incorporates by reference all previous paragraphs and allegations of this Complaint as if fully set forth herein.

49.     Plaintiff purchased and used the subject product.

50.     At all times relevant to this action, Defendant was the developer, designer, manufacturer, seller and supplier of the subject product, and Defendant placed the subject product into the stream of commerce.

51.     The subject product was expected to and did reach Plaintiff without substantial change in the condition in which it was manufactured and sold.

52.    The subject product was unsafe for normal or reasonably anticipated use; and was defective in design, formulation and manufacture, and the defects existed at the time of sale.  It contained a defect inherent to the solution itself.  This defect caused it to be ineffective as a disinfectant for the cleaning and storage of contact lenses.

53.    When it left the hands of the manufacturer and supplier, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect, in that:

a.    The subject product contained fusarium kerit/tis;

b.    The subject product failed to act as a disinfectant;

c.    The subject product contained ingredients that allowed fusarium keritis to grow in the subject product;

d.    The subject product contained ingredients that allowed fusarium keritis to grow in Plaintiff's right eye;

e.    The subject product failed to contain ingredients that would have prevented the growth of fusarium keritis;

f.    The subject product failed to contain ingredients that would have prevented the growth of fusarium keritis in Plaintiff's right eye; and

g.    Other defects that may reveal themselves through discovery.

54.    At all relevant times, Plaintiff used the subject product for the purpose and in the manner normally intended, and did not misuse the product.

55.    Plaintiff could not, through the exercise of reasonable care, have discovered the subject product's defects or perceived the dangers posed by the product.

56.     As a direct result of the acts and omissions of Defendant, Plaintiff has

sustained permanent injuries. These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

57.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

58.    Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

59.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

60.    As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT III
### Strict Products Liability – Failure to Warn

61.     Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as if fully set forth herein.

62.     Defendant had a duty to warn Plaintiff of the risks and/or defects of the subject product about which it knew or should have known.

63.     Defendant failed to adequately warn Plaintiff of the risks of the subject product, including:

a.      Defendant failed to adequately warn of the dangers inherent with the use of the subject product due to its defective design and/or defective formulation;

b.      Defendant failed to adequately warn of the adverse side effects associated with the use of the subject product and the comparative severity, incidence and duration of such adverse effects;

c.      Defendant failed to adequately warn of the symptoms, scope, severity or frequency of the potential side effects of the subject product;

d.      Defendant failed to adequately warn of the results of the clinical trials, testing, study and post-marketing outbreaks of fusarium keratitis associated with the use of the subject product;

e.      Defendant failed to provide post-marketing warnings and/or instructions;

f.      Defendant failed to adequately warn of the dangers and defects of the subject product; and

g.     Other failures that may reveal themselves during discovery.

64.     At all relevant times, Defendant actively promoted the use of its products directly to consumers throughout the United States and worldwide.

65.     The subject product was in a defective condition and unreasonably dangerous to Plaintiff when it left Defendant's possession, custody or control.

66.     Had Plaintiff been adequately warned by Defendant of the dangers of the subject product, he would not have used it and would not have been damaged thereby.

67.     Had Plaintiff been adequately warned by Defendant of the dangers of the subject product, Plaintiff could have received medical care to treat his injuries in a more effective manner.

68.     By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

69.     As a direct result of the acts and omissions of Defendant, Plaintiff has sustained permanent injuries.  These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

70.     Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of

consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

71.     Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

72.     By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

73.     As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT IV
### Breach of Express Warranty

74.     Plaintiff incorporates by reference all previous paragraphs and allegations of this Complaint as if fully set forth herein.

75.     Defendant expressly represented and warranted to Plaintiff that the subject product was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, particularly any unwarned-of side effects, and that it was adequately tested.

76.     These warranties came in the form of:

14

a. Defendant's public and written and verbal assurances of the safety and efficacy of the subject product;

b. Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create an increased demand for the subject product, which failed to warn of the risk of injuries inherent to the use of the subject product;

c. Verbal and written assurances made by Defendant regarding the subject product and downplaying the risk of injuries associated with the product;

d. False and misleading written information, supplied by Defendant, upon which Plaintiff, the public, the medical community and contact lens solution retailers relied in prescribing or recommending the subject product during the period of Plaintiff's use of the subject product; and

e. Direct-to-consumer advertisements.

77.    The documents referred to above were created by and at the direction of Defendant.

78.    Defendant knew or had reason to know that the subject product did not conform to these express warranties and representations in that the subject product is neither as safe nor as effective as represented, and the subject product produces serious and unwanted adverse side effects, as described above. Defendant thereby breached its express warranties and representations.

79.    These express warranties and representations by Defendant were a part of the basis of the bargain in Plaintiff's purchase of the subject product from Defendant.

80.    The subject product did not and does not conform to Defendant's express representations because it is not safe, has serious side effects, including unwarned-of side effects, and causes severe and permanent injuries.

81.    Plaintiff relied upon Defendant's express warranties. Had Plaintiff understood and appreciated how dangerous the subject product was, he would not have used it.

82.    The subject product was not fit for its intended use and it was defective at the time Plaintiff purchased it.

83.    Plaintiff used the product as it was intended to be used and could not have discovered the defect in the exercise of ordinary care and the defect was a substantial factor in causing Plaintiff's injuries.

84.    As a direct result of the acts and omissions of Defendant, Plaintiff has sustained permanent injuries. These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

85.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of

16

consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

86.    Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

87.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

88.    As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT V
### Breach of Implied Warranty

89.    Plaintiff incorporates by reference all of the paragraphs and allegations of this Complaint as if fully set forth herein.

90.    Defendant manufactured, distributed, advertised, promoted and sold the subject product.

91.    At all relevant times, Defendant knew of the use for which the subject product was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

92.    Defendant was aware that consumers, including Plaintiff, would use the subject product for the cleaning and storage of their soft contact lenses.

93.    Plaintiff reasonably relied upon Defendant's judgment and expertise to sell or recommend the subject product only if it was indeed of merchantable quality and safe and fit for its intended use.  Plaintiff reasonably relied upon Defendant's implied warranty for the subject product.

94.    The subject product reached consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

95.    Defendant breached its implied warranty to consumers, including Plaintiff, in that the subject product was not of merchantable quality or safe and fit for its intended use.

96.    The subject product was defective at the time Plaintiff purchased it.

97.    Plaintiff used the product as it was intended to be used and could not have discovered the defect in the product in the exercise of ordinary care.

98.    The defect in the subject product was a substantial contributing factor in causing Plaintiff's injuries, damages and losses.

99.    As a direct result of the acts and omissions of Defendant, Plaintiff has sustained permanent injuries.  These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be

required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

100.    Defendant's conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

101.    Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

102.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

103.    As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT VI
### Misrepresentation and Fraudulent Concealment

104.    Plaintiff incorporates by reference all previous paragraphs and allegations of this Complaint as if fully set forth herein.

105.    Defendant's superior knowledge and expertise, its relationship of trust and confidence with the public, its specific knowledge regarding the risks and dangers of the

subject product and its intentional dissemination of promotional and marketing information about the subject product for the purpose of maximizing its sales, gave rise to the affirmative duty to meaningfully disclose and provide all material information about the subject product's risks and harms to consumers, including Plaintiff.

106.    Defendant made fraudulent affirmative and material misrepresentations and omissions, as statements of fact, with respect to the subject product, including:

    a.  Defendant represented through its labeling, advertising, marketing materials, advertisements and packaging that the subject product had been tested and was found to be safe and effective for the cleaning, disinfecting and storage of soft contact lenses;

    b.  Defendant represented in the packaging for this product that the product, "provides sustained comfort, removes protein daily, cleans, rinses, disinfects and stores," but knew that the product did not properly clean or disinfect contact lenses and was associated with the outbreak of fungal keratitis infections in its users;

    c.  Defendant represented in the packaging of this product that the product "disinfects" when Defendant knew or had reason to know that the representation was false and misleading and that the product transmits infectious fungal diseases such as fusarium keratitis to its users;

    d.  Defendant represented that the subject product was safer (or at least as safe) as other alternative contact lens solution products when it was not; and

e.  Defendant knew or had reason to know, prior to November 2005, that there had been an outbreak of fusarium keratitis cases in Asia linked to the use of the subject product, yet despite this knowledge, Defendant intentionally failed to alert consumers and the public in the United States, including Plaintiff, of this situation, suppressed and concealed this information and intentionally continued to market the product and allowed the product to remain on the shelves for sale in the United States from November, 2005 to at least April 10, 2006.

107.  Defendant made affirmative misrepresentations and fraudulently, intentionally and/or recklessly concealed and suppressed material adverse information regarding the safety and effectiveness of the subject product. These representations were untrue and were known by Defendant to be untrue at the time Defendant made the representations.

108.  Defendant omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of the subject product, including, but not limited to, serious fungal eye infections which cause permanent diminishment of vision or blindness.

109.  Defendant ignored, downplayed, avoided and/or otherwise understated the serious nature of the risks associated with the use of the subject product in order to increase its sales to consumers, including Plaintiff.

110.  The representations and concealment were undertaken by Defendant with the intent that Plaintiff would rely upon them.

111.   Defendant's representations and concealments were undertaken with the intent of defrauding and deceiving Plaintiff to induce and encourage the sale of the subject product.

112.   Plaintiff justifiably relied on and was induced by Defendant's misrepresentations, omissions and/or active concealment of the dangers of the subject product in selecting it.

113.   Plaintiff did not know that the representations were false and misleading and omitted critical and material information about the safety of the product; Plaintiff could not have discovered this information through ordinary means and was justified in relying upon Defendant's superior skill, knowledge, representations and omissions.

114.   Had Plaintiff been aware of the increased risk of severe fungal eye infections associated with the subject product and the relative efficacy of the subject product compared with other readily available contact lens solutions, Plaintiff would not have purchased and used the subject product.

115.   As a direct result of the acts and omissions of Defendant, Plaintiff has sustained permanent injuries. These injuries have caused and will continue in the future to cause extensive pain and suffering, emotional distress and have substantially reduced Plaintiff's ability to enjoy life; Plaintiff has sustained economic loss, including loss of earnings and diminished loss of earning capacity in an amount to be determined; Plaintiff has had to expend substantial sums of money for medical and related care and will be required to do so in the future; and Plaintiff will require further medical treatments for the remainder of his life.

116.   Defendant's conduct was committed with knowing, conscious, wanton,

willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendant and deter it from similar conduct in the future.

117.    Defendant's conduct was reckless and beyond standards of common decency so as to permit the recovery of punitive damages.

118.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic losses.

119.    As a result of Defendant's wrongful conduct, Plaintiff is entitled to compensatory and punitive damages in a sum to be determined at trial in this matter.

WHEREFORE, Plaintiff Mark Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), compensatory damages, punitive and exemplary damages, pre-judgment and post-judgment interest as provided by law, for his costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

## COUNT VII
### Loss of Consortium

120.    Plaintiff Cathy Merz incorporates by reference all previous paragraphs and allegations of this Complaint as if fully set forth herein.

121.    At all times relevant to this cause of action, Plaintiff Cathy Merz was the lawfully wedded spouse of Plaintiff Mark Merz.

122.    As a direct and proximate result of the aforesaid negligent acts or omissions, Plaintiff Cathy Merz has lost the services, support, society and consortium of her husband, Plaintiff Mark Merz, and shall lose same in the future.

WHEREFORE, Plaintiff Cathy Merz prays for judgment against Defendant Bausch & Lomb, Inc. for a fair and reasonable amount in excess of Seventy Five Thousand Dollars ($75,000.00), for her costs incurred herein and for such other and further relief as the Court deems just under the circumstances.

THE SIMON LAW FIRM, P. C.

By: /s/ Amy Collignon Gunn
Amy Collignon Gunn #06236877
Anne Brockland #06297861
Attorneys for Plaintiffs
St. Louis, Missouri 63101
Phone : (314) 241-2929
Fax: (314) 241-2029